598 A.2d 8

**Robin Lee COLLINS**

v.

**STATE of Maryland.**

**No. 84, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Nov. 6, 1991.

---

274

Clarence W. Sharp, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Argued before ROSALYN B. BELL, FISCHER and HARRELL, JJ.

ROSALYN B. BELL, Judge.

Robin Lee Collins was convicted by a jury in the Circuit Court for Prince George's County of possession of cocaine with intent to distribute. Because she had previously been convicted of a drug offense, she was sentenced under the mandatory sentencing provisions of Md.Code Ann. Art. 27, § 286(c)(1) (1957, 1987 Repl.Vol., 1991 Cum.Supp.), to a 20–year prison term. Of that term, the trial judge suspended 10 years. Collins has appealed and presents three questions for our review:

—Was there sufficient evidence to support her conviction for possession with intent to distribute cocaine?

—Did the trial judge commit plain error in his instructions to the jury?

—Did the trial judge err in sentencing her as a subsequent offender under the mandatory sentencing provisions when the State never offered proof of her prior conviction at the sentencing hearing?

We find no merit in Collins's first and second contentions. We also hold that, while the trial judge could properly sentence Collins under the mandatory sentencing provisions, the trial judge erroneously believed he had no discretion to direct that Collins be committed for drug treatment in lieu of a mandatory prison sentence. Hence, we will vacate the judgment and remand for resentencing.

The facts of this case are quite simple. On February 23, 1990, members of the Prince George's County Police Action Squad observed a woman, later identified as Collins, and an unidentified male standing in front of the Eastern Carryout in Hyattsville. The two then got into a car and left for about five minutes. When they returned, two other women approached Collins. According to the police, one of the women handed Collins a $20 bill and Collins gave a "piece of something" in return. Collins and the male were arrested, but the police did not stop the other two women.

When she was arrested, Collins had two $20 bills and two $1 bills in her possession, along with a 0.1 gram rock of crack cocaine and two homemade pipes. At trial, Collins testified that she was not selling cocaine, but had gone out to purchase some for her personal use. She was directed to the two women to see if they had some crack. She originally wanted to buy $60 worth, but the women did not have that much. Instead, Collins testified that she bought a small rock for $8, handing one of the women a $10 bill and receiving two $1 bills in change.[1] The police then arrested her. She was subsequently charged with possession of a controlled dangerous substance, possession with intent to distribute and possession of drug paraphernalia.

## THE SUFFICIENCY OF THE EVIDENCE

Appellant first contends that the evidence at trial was not sufficient to support her conviction on the distribution charge. She contends that the only permissible inferences that can be drawn from the evidence adduced at trial indicate that she was purchasing, rather than selling, crack cocaine for her own personal consumption. While the evidence supporting an inference that appellant was selling was by no means overwhelming, we hold that it was sufficient to support her conviction.

In determining the sufficiency of the evidence, the appropriate inquiry is not whether the reviewing court itself believes that the evidence at trial established guilt beyond a reasonable doubt, but rather,

> "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In accordance

---

1. Collins's claim is inconsistent. If the jury believed this testimony, she fails to explain how she proposed to buy $60 worth of crack when she apparently had only $50.

with this standard, it is the responsibility of the trier of fact, and not the reviewing court, "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Moreover, judging the credibility of witnesses is a task for the trier of fact. *Bryant v. State*, 49 Md.App. 272, 283, 431 A.2d 714, *cert. denied*, 291 Md. 782 (1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). Whether a defendant possessed a controlled dangerous substance with an intent to distribute is also a question for the trier of fact. *Gipe v. State*, 55 Md.App. 604, 618, 466 A.2d 40 (1983). The element of intent is generally proved by circumstantial evidence. *See Waller v. State*, 13 Md.App. 615, 618, 284 A.2d 446 (1971), *cert. denied*, 264 Md. 752 (1972).

In this case, viewing the evidence in the light most favorable to the prosecution, Corporal Toles, the police officer who observed appellant's actions prior to her arrest, testified that he *saw* her pass "a piece of something" to one of the women and receive back a $20 bill. As appellant contends, there is certainly some doubt as to whether Toles could see as well as he claimed; he was looking from 30 feet away, through a window, without the benefit of binoculars.[2] Nevertheless, Toles testified that he saw a drug transaction take place. Although Toles was unable to identify what the "something" was that appellant passed in return for the $20, it was certainly reasonable for the jury to infer that appellant had passed cocaine.[3] This inference

---

2. At trial, appellant's counsel was permitted to test Toles on his ability to identify both a $10 bill and a $5 bill, held in counsel's hand, at an unidentified distance from Toles. Toles was unsuccessful in identifying the $5 bill, but correctly identified the $10 bill.

3. It must be made clear that appellant's charges did not arise from the cocaine that Toles allegedly saw her pass. Rather, she was charged with possession of an additional quantity of cocaine with intent to distribute. The significance of Toles's observations, therefore, was not direct evidence of appellant's guilt, but circumstantial evidence demonstrating appellant's intent to distribute the cocaine which remained in her possession when she was arrested.

is supported by the uncontroverted and admitted fact that appellant possessed an additional quantity of cocaine when she was arrested. Taken together, this circumstantial evidence permits, although does not demand, an inference that appellant intended to distribute the remaining rock of crack cocaine.

Appellant also contends that "[p]ossession of two pipes and a 0.1 gram piece of crack can only infer possession for personal use." We do not agree.

In Maryland, no specific quantity of drugs has been delineated that distinguishes between a quantity from which one can infer and a quantity from which one cannot make such an inference. *Gipe*, 55 Md.App. at 617–618, 466 A.2d 40. The quantity of drugs possessed is circumstantial evidence of intent. *Anaweck v. State*, 63 Md.App. 239, 255, 492 A.2d 658, *cert. denied*, 304 Md. 296, 498 A.2d 1183 (1985). While the quantity of cocaine in this case did not, in and of itself, demonstrate an intent to distribute, other circumstantial evidence may be introduced to prove intent. *Anaweck*, 63 Md.App. at 255, 492 A.2d 658. Toles's observations, as discussed above, were sufficient circumstantial evidence to support appellant's conviction. We hold that the evidence adduced at appellant's trial was sufficient to support her conviction on the charge of possession of a controlled dangerous substance with intent to distribute.

## THE TRIAL JUDGE'S INSTRUCTIONS

Appellant next contends that the trial judge erred in his instructions to the jury by usurping the jury's fact finding function and by incorrectly stating the State's burden of proof in a criminal case. We do not agree.

As an initial matter, appellant concedes that her trial counsel failed to object to any of the trial judge's instructions. As such, these objections are normally held to be waived. Rule 4–325(e). Despite this concession, appellant asks us to review the trial judge's instructions pursuant to the "plain error" provision of Rule 4–325(e), which states:

"An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object."

The language of the above quoted Rule makes clear that review of plain error is not a right but is rather within the discretion of the appellate court. *Brown v. State,* 14 Md. App. 415, 418, 287 A.2d 62 (1972). "[A]bsent the existence of compelling circumstances, the failure of a defendant to register an objection to a jury instruction pursuant to Rule 756 f [now Rule 4–325(e)] bars our consideration of the matter." *Squire v. State,* 280 Md. 132, 135, 368 A.2d 1019 (1977). In exercising this discretion, "[t]he only hard and fast rule is that there are no hard and fast rules." *Williams v. State,* 34 Md.App. 206, 216, 366 A.2d 399 (1976) (Moylan, J., concurring). *See Sine v. State,* 40 Md.App. 628, 632, 394 A.2d 1206 (1978) ("[T]here are no constant and immutable guidelines controlling the exercise of the appellate court's discretion in this area.")

In this case, we find no compelling circumstances which move us to exercise our discretion to review errors not objected to at trial. With respect to two of the three "errors" raised for the first time on appeal, we do not see the error alleged.

■ Appellant first contends that the trial judge usurped the jury's fact finding function when he instructed the jury:

"Now, she has admitted on the stand that she possessed the substance, so the State, really, has met, by the defendant's admission, its burden of proof of that one element of that first offense, possession."

This instruction accurately summarized appellant's own testimony; appellant at trial chose to admit that she possessed cocaine and paraphernalia, choosing to fight the case on the ground that she did not intend to distribute the cocaine found on her at the time of her arrest. A trial judge is permitted to summarize the testimony in his or her instructions to the jury, so long as he or she tells both sides of the

story and instructs the jury that "it is the sole judge of the facts, the weight of the evidence, and the credibility of the witnesses." Rule 4–325(d). While in this case there was no "other side" to tell, the trial judge later instructed the jury that it was the "sole determiner of the facts." Therefore, the challenged instruction wholly complied with the Rule and was not erroneous.

■ Appellant has a similar complaint on another instruction which gives us greater pause. The trial judge instructed the jury:

"There would be no justification for you to conclude that the defendant was not guilty of the second count, since she has taken the stand, and admitted that she possessed both the cocaine and the pipes to smoke the cocaine."

This instruction amounted to a directed verdict of guilty on the possession of cocaine charge and can be read similarly with respect to the possession of paraphernalia charge. Because it usurps the fact-finding function of the jury, such an instruction is clearly error, *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–573, 97 S.Ct. 1349, 1355–1356, 51 L.Ed.2d 642 (1977); *United Brotherhood of Carpenters & Joiners v. United States,* 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973 (1947), but in the circumstances of this case, it is of no consequence.

As stated above, appellant's trial counsel made a conscious tactical decision to concede that she was guilty of the two possession charges, and chose to contest only the possession with intent to distribute charge, specifically the intent element. Therefore, the jury most assuredly would have returned a guilty verdict on the two possession charges, regardless of the trial judge's erroneous instruction:

"In determining whether an error is harmless, we look to see whether the 'erroneous ruling, in relation to the totality of the evidence, played a significant role in influencing the rendition of the verdict, to the prejudice of the appellant.' Unless we, 'upon [our] own independent re-

view of the record, [are] able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated.' "

*Garrett v. State,* 59 Md.App. 97, 107, 474 A.2d 931, *cert. denied,* 300 Md. 483, 479 A.2d 372 (1984), quoting *Dorsey v. State,* 276 Md. 638, 653, 350 A.2d 665 (1976). Based on our independent review of the record, we conclude that, under the circumstances of this case, the trial judge's erroneous instruction was harmless beyond a reasonable doubt.

Finally, appellant contends that the trial judge committed plain error when he instructed the jury:

"[P]utting those in your mind aside for a moment to think of the issue, again, the issue in this case is very simple and very narrow.

"The defendant has put that issue in this case, whether or not Corporal Toles and Sergeant Ford and Corporal Michaelis were telling accurate accounts of what occurred, or was the defendant's account the true and accurate account.

"If you believe the account of the officers, then you would be justified in believing that the State had proven its case beyond a reasonable doubt.

"If you don't believe them, then you would be justified in concluding that they did not prove their case beyond a reasonable doubt, and you would acquit the defendant of the first account [sic] only."

Appellant's argument is not totally clear to us for two reasons. First, the challenged instruction essentially mirrors the closing argument of defense counsel; and second, appellant's argument in her brief on this point is general rather than specific:

"Appellant asserts that this represents an inaccurate definition of the State's burden of proof beyond a reasonable doubt and again improperly interjected the court into the jury's role in making factual findings."

Appellant has failed to make any specific arguments as to how the trial judge's instruction was inaccurate or how it interjected him into the jury's fact-finding function. Unlike the "directed verdict" instruction discussed *supra*, this instruction merely permitted, rather than commanded, the jury to find appellant guilty if the jury believed the State's witnesses. Furthermore, and as stated *supra*, the trial judge is allowed to summarize the evidence in giving his instructions, so long as he also instructs the jury that it is the sole judge of the facts. Rule 4–325(d). The trial judge adhered to this principle. We are unable to detect the error in this instruction.

## THE MANDATORY SENTENCE

When the State initially brought the charges against appellant in this case, it also provided notice to appellant that it intended to prosecute her as a subsequent offender under Md.Code Ann. Art. 27, § 286(c) (1957, 1987 Repl.Vol., 1991 Cum.Supp.). Following appellant's conviction for possession with intent to distribute, the State at sentencing stated that it was prepared to prove beyond a reasonable doubt that appellant had previously been convicted for distribution of a controlled dangerous substance, thus making her subject to a mandatory sentence of 10 years. In response, appellant's counsel argued that the trial judge had the discretion to have appellant committed for drug treatment in lieu of the mandatory sentence and proffered several witnesses to support his argument that appellant should be committed for drug treatment pursuant to Md. Health–Gen.Code Ann., § 8–507 (1982, 1990 Repl.Vol.).

Holding that he had no such discretion, and not waiting for the State to present any evidence of the prior conviction, the trial judge sentenced appellant to a 20–year prison term and suspended 10 years. Appellant contends that the trial judge erred (1) in sentencing her to a mandatory prison term when the State offered no evidence of her prior conviction; and (2) in holding that he had no discretion to commit appellant for drug treatment in lieu of the mandato-

ry sentence. We reject the first contention, accept the second, and therefore vacate and remand for resentencing.

—The Sentence Under Art. 27, § 286(c)—

Because the State never formally offered proof of any kind of appellant's prior conviction at sentencing in this case, she contends that her mandatory sentence must be reversed. Under the circumstances of this case, we do not agree.

In this case, following her conviction for possession with intent to distribute cocaine, the State sought to have appellant sentenced to a mandatory ten-year prison sentence as a second offender under Art. 27, § 286(c). At the sentencing hearing, the prosecutor stated that she was ready to go forward with proof of the prior conviction, but the trial judge, following a lengthy discussion of the court's discretion to commit appellant for drug treatment, proceeded to sentence appellant without proof of the prior conviction having been offered by the State. Proof of that prior conviction, however, was set forth in the presentence investigation report provided to appellant's counsel.

We deal here with an enhanced penalty statute:

"Where the General Assembly has required or permitted enhanced punishment for multiple offenders, the burden is on the State to prove, by competent evidence and beyond a reasonable doubt, the existence of all of the statutory conditions precedent for the imposition of enhanced punishment."

*Jones v. State,* 324 Md. 32, 37, 595 A.2d 463 (1991). *See Sullivan v. State,* 29 Md.App. 622, 631, 349 A.2d 663 (1976) (statement by a prosecutor that his records showed that defendant had been convicted of a prior handgun offense not sufficient evidence).

Two of this Court's earlier cases presented circumstances similar to the facts here. In *Ford v. State,* 73 Md.App. 391, 534 A.2d 992 (1988), although the prosecutor stated that he had a certified copy of the defendant's prior conviction, it was never offered into evidence. *Ford,* 73 Md.App. at 402,

534 A.2d 992. No presentence investigation report was prepared. *Ford,* 73 Md.App. at 403, 534 A.2d 992. We said in that case:

> "The record discloses only the bare assertion from the prosecutor that appellant had previously been convicted of a handgun violation. That statement by the prosecutor does not satisfy the State's burden of proving that appellant was previously convicted of a qualifying crime."

*Ford,* 73 Md.App. at 403, 534 A.2d 992. When the State fails to prove the qualifying conviction with sufficient evidence, it is not permitted a second "bite at the apple"; a defendant on resentencing may not be subject to a mandatory or enhanced sentence. *Butler v. State,* 46 Md.App. 317, 324, 416 A.2d 773, *cert. granted,* 288 Md. 732, *dismissed on motion of the State* (1980).

In *Hall v. State,* 69 Md.App. 37, 516 A.2d 204 (1986), like *Ford,* the prosecutor failed to offer formal proof of the defendant's prior conviction. Unlike *Ford,* however, a presentence investigation (PSI) was prepared in *Hall,* and this Court held that such evidence was sufficient:

> "[The presentence investigation] report, which is part of the record, discloses the 1974 conviction and the service of the sentence thereon at the Montgomery County Detention Center. The presentence investigator indicates that the source of that information was the records of the Montgomery County Police Department. The record further reflects that at the sentencing hearing the court was advised by the cross-appellee's attorney of his review of the presentence report with his client on the day prior to sentencing. Thereafter, that attorney pointed out a number of alleged errors in the report. None of these allegations shed any doubt upon the accuracy of the recitation in the report of the cross-appellee's service of the sentence imposed upon him for his 1974 conviction of daytime housebreaking. Under these circumstances, which are tantamount to a judicial admission, we hold that there was competent evidence before the sentencing judge of incarceration as a result of the 1974 conviction to permit

its use as a predicate offense for mandatory sentencing under Article 27, § 643(b)."

*Hall,* 69 Md.App. at 63, 516 A.2d 204.

■  Based on the facts of this case, we hold that appellant's reliance on *Ford* is misplaced.  As in *Hall,* a PSI report was prepared which recited appellant's prior conviction.  The PSI report is a part of the record before us.  Furthermore, defense counsel at sentencing, in his arguments, never contended that anything in the PSI report relative to the prior conviction was incorrect or erroneous.  His arguments, in fact, assumed that appellant was eligible for a mandatory sentence; nevertheless, he argued that appellant was also eligible for drug treatment in lieu of the mandatory sentence.  We need not and do not reach the issue of whether failure to object to a PSI report containing evidence of the prior conviction is a judicial admission, however, because appellant, in her direct testimony at trial, admitted the prior conviction unequivocally.[4]  This clearly constitutes a judicial admission.  *Hall,* 69 Md.App. at 63, 516 A.2d 204.

In these circumstances, we hold that competent evidence of appellant's prior conviction was before the sentencing judge.  The mandatory sentence pursuant to Art. 27, § 286(c) was therefore not illegally imposed.

—Discretion to Commit for Drug Treatment—

At sentencing, appellant argued that the trial judge had the discretion to commit appellant for drug treatment in lieu of the mandatory 10–year sentence under Art. 27,

---

**4.** As a strategic matter, defense counsel elicited testimony about the prior conviction from appellant on direct examination:

"Q.  And you also have had trouble with the law with regard to drugs before, haven't you?

"A.  Yes, to get drugs—

"Q.  Right now just answer yes or no?

"A.  Yes.

"Q.  And that does include a previous conviction of possession with intent to distribute, does it not?

"A.  Yes."

§ 286(c)(1). The trial judge explicitly held that he had no such discretion; in fact, he indicated that he would have sentenced appellant to drug treatment had he possessed the power to do so. Appellant contends that the trial judge's ruling was error. We agree.

Counsel argued at sentencing not that she was not eligible for a mandatory sentence, but that the trial judge had the discretion to commit her instead for drug treatment under Md.Health–Gen.Code Ann., § 8–507(a) (1982, 1990 Repl.Vol.):

"If a court finds in a criminal case that a defendant has an alcohol or drug dependency, the court may commit the defendant as a condition of release, after conviction, or at any other time the defendant voluntarily agrees to treatment to the Department for inpatient, residential, or outpatient treatment."

At appellant's sentencing hearing, several witnesses testified about her drug problems, her personal and criminal history, and her efforts at reform while in prison.[5] Defense counsel proffered to the court that appellant had been accepted into the Second Genesis program, as well as a Pennsylvania drug treatment program called Penell. He therefore requested the trial judge to commit appellant to one of these programs for drug treatment instead of a mandatory sentence.

In response to defense counsel's contentions, the prosecutor argued:

"Your Honor, it is my understanding that once the State proves the elements of the mandatory offenses at sentencing that the Defendant has to go to jail for ten years without parole.

"The State is ready to proceed on that and once the State does and meets it [sic] burden in proving that Robin Lee Collins was the person who was convicted earlier in this present case then the Court does not have any

---

5. Appellant served approximately 297 days prior to being sentenced.

discretion and the Court cannot sentence her to any type of help program in lieu of the ten years without parole."

After a somewhat lengthy discussion, the judge sentenced appellant to a 20–year prison term with 10 years suspended. In so doing, he clearly and repeatedly indicated his belief that he had no discretion to sentence appellant to drug treatment:

"The legislature has spoken loud and clear with respect to repeat drug offenses and it leaves me no authority to suspend or order treatment as a part of this sentencing proceeding.

\*　　\*　　\*　　\*　　\*　　\*

They have taken away that power and authority for me when they passed the law requiring mandatory imposition of 10 years. We may disagree with that but the fact of the matter is the legislature has taken away that authority.

"I don't have the authority to put you on probation and to order your treatment. . . .

\*　　\*　　\*　　\*　　\*　　\*

"If you want to file a motion for reconsideration I will take that motion under advisement. In the event that none of which I know now and I don't want to hold out false hopes I don't believe I have the authority to impose a sentence less than 10 years. If some higher authority tells me I have that authority to impose a sentence less than 10 years I can act on your motion for reconsideration."

Based on our reading of the statute, we hold that the trial judge had the discretion to commit appellant for drug treatment prior to the imposition of the mandatory sentence. Both the prosecutor and the trial judge were wrong in stating that he had no such discretion.

In the area of statutory construction, this Court has stated:

"The cardinal rule in the construction of statutes is to effectuate the intent of the Legislature. In order to do

so, a court should consider the object or purpose to be attained by the statute, and the evils or mischief sought to be remedied, and so construe the statute as to carry out and effectuate, or aid in, the general purposes and policies thereof, and suppress the mischief and advance the remedy. If a statute is susceptible of more than one construction, it should if possible, be given that construction which will effectuate or carry out its purpose or object, and it should not be given a construction that would do more than effect the legislative object or purpose. This is especially true when a court is construing a penal statute, which, according to well established case law, is to be strictly construed. Strict construction, relative to a penal statute, means a construction favorable to the accused, and against the State. In short, the spirit or intention of the statute should control a court's construction of that statute."

*Johnson v. State*, 75 Md.App. 621, 630–631, 542 A.2d 429 (1988), *cert. denied*, 316 Md. 675, 561 A.2d 215 (1989) (citations omitted). It is with these general principles in mind that we shall proceed to construe Art. 27, § 286(c).

Md.Code Ann. Art. 27, § 286(b) and (c), (1957, 1987 Repl. Vol., 1990 Cum.Supp.), states:

"(b) Any person who violates any of the provisions of subsection (a) of this section with respect to:

"(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $25,000, or both.

"(2) Phencyclidine, 1–(1–phenylcyclohexyl) piperidine, 1–phenylcyclohexylamine, or 1–piperidinocyclohexanecarbonitrile, classified in Schedule II, or n–ethyl–1–phenylcyclohexylamine, 1–(1–phenylcyclohexyl)–pyrrolidine, or 1–(1–(2–thienyl)–cyclohexyl)–piperidine, classified in Schedule I, is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $20,000, or both.

"(3) Any other controlled dangerous substance classified in Schedule I, II, III, IV, or V shall, upon conviction, be deemed guilty of a felony and sentenced to a term of imprisonment for not more than 5 years or a fine of not more than $15,000, or both. Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than 2 years. The prison sentence of a person sentenced under this paragraph as a repeat offender may not be suspended to less than 2 years, and the person may be paroled during that period only in accordance with Article 31B, § 11 of the Code.

"(c)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or (b)(2) of this section shall be sentenced to imprisonment for not less than 10 years if the person previously has been convicted:

"(i) Under subsection (b)(1) or subsection (b)(2) of this section;

"(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section; or

"(iii) Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State.

"(2) The prison sentence of a person sentenced under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section or any combination of these offenses, as a second offender may not be suspended to less than 10 years, and the person may be paroled during that period only in accordance with Article 31B, § 11 of the Code.

"(3) This subsection does not prevent, prohibit, or make ineligible a convicted defendant from participating in the rehabilitation program under Title 8, Subtitle 5 of the Health–General Article, because of the length of sentence, if imposed under subsection (b)(1) of this section."

A simple reading of the statute suggests that a second drug offender sentenced under subsection (b)(1), such as appellant, remains eligible for drug treatment under § 8–507(a) of the Health–Gen. Article. This conclusion becomes inescapable, however, upon reading the current version of subsection (c) alongside its predecessor. Prior to 1988, all subsequent drug offenses were treated similarly, whether it was the second or the seventh. Md.Code Ann. Art. 27, § 286(b)(1) (1957, 1987 Repl.Vol.), read as follows:

"(b) Any person who violates any of the provisions of subsection (a) with respect to:

"(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a felony and is subject to imprisonment for not more than 20 years, or a fine of not more than $25,000, or both. Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than 10 years. The prison sentence of a person sentenced under this paragraph as a repeat offender may not be suspended to less than 10 years, and the person may be paroled during that period only in accordance with Article 31B, § 11 of the Code. This subsection does not prevent, prohibit or make ineligible any convicted defendant from participating in the rehabilitation program under Title 9, Subtitle 6 of the Health–General Article [now Title 8, Subtitle 5], because of the length of sentence."

Under this earlier version of § 286, there was no doubt that a subsequent offender was eligible for drug treatment in lieu of a mandatory sentence.

In 1988, however, in response to the greatly increased number of repeat drug offenders being prosecuted in Maryland, the Legislature amended Art. 27, § 286 to provide for increased penalties for third and fourth offenses. Current § 286(c) addresses second offenders, § 286(d) third offend-

ers, and § 286(e) fourth offenders.[6] Only § 286(c), however, contains the language of former § 286(b)(1), allowing for drug treatment which is at issue here. While previously all subsequent drug offenders had been eligible for drug treatment, it is clear that the Legislature now has made a determination that, among repeat offenders, only second offenders will remain eligible for such treatment.

This reading of Art. 27, § 286 is borne out by the legislative history of the bill. *See* Senate Judicial Proceedings Committee, *Bill Analysis*, House Bill 606 (1988), at 1:

"In the case of a second conviction, eligibility for a rehabilitation program under Title 9, Subtitle 6 [now Title 8, Subtitle 5] of the Health–General Article is not precluded because of the length of the sentence imposed if the violation involves a Schedule I or II narcotic drug." [7]

Prior to 1988, all subsequent offenders were treated equally with respect to both sentencing and eligibility for drug treatment. *See Bill Analysis, supra,* at 1–2. In amending § 286, the Legislature increased the mandatory penalties for third and fourth offenders and eliminated their eligibility for drug treatment. The mandatory sentence for second offenders, however, remained the same and the only conclusion that can be drawn from the retention of the language now in subsection (c)(3) is that a second offender's eligibility for drug treatment remained unchanged as well. To read the statute differently would render the current version of subsection (c)(3) meaningless. Statutes should be construed "so that no part is 'rendered surplusage, superfluous, mean-

---

**6.** Presumably because § 286(e) provides for a 40–year prison sentence without parole for a fourth offender, the Legislature saw no need to address fifth or subsequent offenders.

**7.** In the event any doubt remains about the Legislature's intent to allow second offenders to remain eligible for drug treatment, the legislative history bill file of the 1988 bill indicates that the bill was originally introduced during the 1987 legislative session *without* the drug treatment provision (House Bill 180), which was handwritten into a copy of the bill at a later date, either in 1987 or 1988. This strongly suggests that the inclusion of this provision in the enacted bill was deliberate and not an oversight.

ingless or nugatory.' " *Montgomery County v. McDonald,* 68 Md.App. 307, 317, 511 A.2d 560 (1986), quoting *Baltimore Building and Constr. Trades Council v. Barnes,* 290 Md. 9, 15, 427 A.2d 979 (1981).

Two additional principles of statutory construction support our reading of § 286. First, penal statutes are to be interpreted strictly, *State v. Fabritz,* 276 Md. 416, 422, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976); that is, in favor of the accused, *Weinecke v. State,* 188 Md. 172, 176, 52 A.2d 73 (1947), and against the State, *Wright v. State,* 24 Md.App. 309, 319, 330 A.2d 482, *cert. denied,* 274 Md. 733 (1975). Second, both Art. 27, § 286(c)(3) and § 8–507 of the Health Gen. Article, because they provide for drug treatment in lieu of prison sentences, are remedial in nature; such statutes should be liberally construed to effectuate their purposes. *State v. Barnes,* 273 Md. 195, 208, 328 A.2d 737 (1974).

Applying our reading of the statute to this case, we hold that the trial court erred in holding that it had no discretion to sentence appellant to drug treatment in lieu of the mandatory sentence. Appellant has one prior drug conviction and she was sentenced under Art. 27, § 286(b)(1). As such, she remains eligible for drug treatment pursuant to § 8–507(a) of the Health–Gen. Article. The trial judge indicated his belief that appellant was a proper candidate for drug treatment. On remand, should he continue to hold that belief, he may commit appellant for drug treatment with Second Genesis, Penell or some other drug treatment program certified pursuant to the Health–Gen. Article.[8]

---

**8.** Should the trial judge decide to commit appellant for drug treatment, there remains the question whether the mandatory sentence must be served following such treatment. The trial judge himself expressed some question about this in deciding that he did not have the discretion to commit appellant for treatment. Under a former version of the Health–Gen. Article, a trial judge had no discretion to sentence a defendant who successfully completed a drug treatment program. *See* Md.Health–Gen.Code Ann., § 9–650(c)(2) (1982). This provision has been replaced, however, by Md.Health–Gen.Code Ann., § 8–507(i) (1982, 1990 Repl.Vol.), which states: "When an individual

CONVICTIONS AFFIRMED.   SENTENCE VACATED.

CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY THE APPELLANT AND ONE–HALF BY PRINCE GEORGE'S COUNTY.

is to be released from a commitment under this section, the Director or the Director's designee shall consult with the court to determine if the individual is to be returned to the court." Because appellant may not be committed for treatment and, even if she is, there is no guarantee she will complete the program successfully, we express no opinion as to the proper disposition of her mandatory sentence if she should, in fact, complete a drug treatment program successfully.